**E G BUCHSEIB, INC v FREY**

Ohio Appeals, 2nd Dist, Franklin Co

No 2561.   Decided Oct 30, 1935

Thomas H. Clark, Columbus, and E. G. Fickel, Columbus, for defendant in error.

B. B. Bridge, Columbus, and J. E. Foster, Columbus, for plaintiff in error.

## OPINION

**By HORNBECK, J.**

We have not undertaken to state with nicely or particularity of detail facts appearing in the record, nor the exact measurements, nor the nature, location and extent of a cut in the macadam, nor the skid marks; nor have we made any mention of certain variation in the testimony of some of the witnesses, all of which were of weight in fixing responsibility for the collision. We have confined ourselves to a broad statement of the relative claims of the parties, which is sufficient as a basis for the consideration of the assigned errors.

The court gave two special instructions to the jury, requested by the defendant before argument. A motion for new trial was interposed, overruled and judgment entered on the verdict.

The brief of defendant assigns the following grounds of error:

1. The court erred in admitting evidence offered by the plaintiff.
2. The court erred in its general charge to the jury.
3. The court erred in refusing to amplify the general charge, as requested by the defendant.
4. Misconduct of the prevailing parties.
5. The verdict of the jury is excessive and appears to have been given under the influence of passion and prejudice.

We discuss them in order:

### Admission of Evidence.

1. The objection in this instance arises by reason of certain testimony of the son of plaintiff, Ceylon E. Frey, in which he was permitted to state his opinion as to whether or not his father was able to work on the farm, dig, chop, load, pitch hay, or plow, as he was before his injury, and permitted to state in what proportion he could at the time of the trial do manual labor on the farm, as compared with his ability to work before the collision.

The record clearly establishes that the son was well qualified by knowledge and observation as a lay witness to express opinion on the subject matter inquired of. The questions propounded required answers upon which lay witnesses are qualified to speak, not in the peculiar field of the expert, but relating to those things which come within common observation. The law has always recognized the distinction. The witness was qualified to express his opinion on the subject and the record discloses that he had given to the jury enough of the facts, if required, upon which he based his opinion to permit it to test the quality of the evidence.

In **State v Auerbach, 108 Oh St, at page 98** it is said:

"When the opinion is based upon personal observation of a subject upon which any ordinarily intelligent person may have expert knowledge and experience, qualification is not necessarily a prerequisite to stating the results of that observation and giving an opinion thereon. * * * So many matters of common observation are subjects upon which witnesses may give the benefit of their observation without previous preliminary expert qualification, that it would seem to be unnecessary to further enumerate them."

At page 552, **Village of Shelby v Clagett, 46 Oh St, 549:**

"Therefore, to say that those about a sick or injured person shall not be permitted to give in evidence their opinion, based on observation, of the condition or suffering of the patient, is to exclude from the jury the only efficient proof of those facts. * * * And when it is remembered that the intelligence, fairness, opportunities to observe, and other circumstances affecting the credibility of the witness, can be called out by a cross-examination, there remains but little solid objection to the reception of this class of testimony."

Objection is made to certain testimony which was admitted by the court in rebuttal. We have examined the testimony and are not satisfied that it was not rebuttal, but are satisfied that its admission did not constitute prejudicial error.

### The General Charge.

2 and 3. On the subject of contributory negligence the court charged as follows:

"The burden of proof is then upon the defendant to prove by a preponderance of the evidence that the plaintiff in this case was guilty of negligence contributing to his own injury and damage. Now the rule as to the burden of proof is just the same with respect to the defendant's proving contributory negligence as it is with respect to the plaintiff proving negligence in the first instance."

It is urged that the court erred in not including in the charge the qualification that contributory negligence might appear as an inference from the plaintiff's own testimony. Where from the testimony offered in behalf of the plaintiff an inference of his contributory negligence may fairly arise, it is error to fail to so charge. Hornbeck & Adams, Trial & Appellate Practice, p. 195. But the trial court, and we believe correctly, held that nothing in the evidence adduced in the plaintiff's case suggested his contributory negligence. Neither the plaintiff nor any of the witnesses, nor the physical facts appearing at the conclusion of the plaintiff's case raised any inference that the plaintiff was negligent in any manner which would contribute to the collision. If his version of the occurrences prior to and at the time of the collision was accepted, then he was not at fault in any manner that could have been a causative factor in producing his injury. If he had gotten beyond the center of Sunbury Road off of Agler Road and had moved 40 feet north on Sunbury Road, and if defendant's driver was 280 feet from the plaintiff when he turned to the north in Sunbury Road, and if he were on his right side of the road at all times after the turn, no inference could be drawn of his contributory negligence. This would be true if perchance he was negligent in coming out onto Sunbury Road off Agler Road without stopping, because such failure to stop could not in any view of the facts as presented by the plaintiff have been a proximate cause of the collision.

The petition set up, as one of the grounds of negligence on the part of defendant's driver, that he operated said truck at an excessive rate of speed. By comparison of the speed at which the plaintiff claims he was moving at all times and the distance that he traveled with the distance traveled by defendant's driver in a given time, it is ascertainable that the truck must have been moving more than three times as fast as the plaintiff's car. The plaintiff's speed was, according to his testimony about twelve miles per hour. This would fix the speed of the truck at about thirty-six miles per hour. On the contrary the defendant testifies that he was moving between 25 and 30 miles per hour; that he had a governor on his motor, which would not permit of a speed in excess of thirty miles per hour, and that there was such a governor so placed is testified by other witnesses. Defendant's driver also says that the plaintiff was moving at a fast rate of speed as he came onto Sunbury Road.

The court in its general charge said:

"The law provides that a person shall not operate his automobile or his truck or any motor vehicle. upon the streets or highways at a speed greater or less than is reasonable and proper, having due regard for the width of the road or street, its surface, the traffic conditions and any other conditions which maintain at that time, and it is for the jury to determine in this case whether the operator of the truck drove his truck at a speed that was greater than was reasonable and proper at that time and at that place, having in mind all of the conditions that existed there as shown by the evidence. If you find that he did operate the truck at a speed greater than was reasonable and proper under those circumstances, that is equivalent to a finding that he was negligent with respect to the speed at which he drove his automobile, or the truck."

The court charged the gist of the offense provided by a statute, namely, the driving of an automobile at a rate of speed faster than is reasonable or proper and also some of the circumstances which were to be taken into consideration by the jury in determining whether or not a violation of the statute was proven, namely, the width of the road or street, its surface, the traffic conditions and other conditions which may maintain at that time.

If §12603, GC, had application in the instant case, the question urged in the brief of counsel for defendant would be made and would be interesting, but the section. applicable in §7249, GC, relating to the speed of commercial cars only, and particularly "2" thereof which provides the rate of speed which shall be prima facie evidence of a rate greater than is reasonable and proper "for vehicles equipped with pneumatic tires designed for the transportation of property, whose maximum weight of vehicle and load is three tons, and not more than six tons * * * twenty-five miles an hour outside of municipal corporations." The truck driver testified that his speed

prior to the collision was between twenty-five and thirty miles per hour, so that by his own admission he was driving at a rate of speed which was prima facie unlawful under the statute. So that the defendant could not be prejudiced in the court's failure to specifically charge rate of speed as the prejudice, if any, operated against the plaintiff.

The defense further claims that §6310-22, GC, had application to the facts appearing in the record. It provides:

"Drivers of vehicles before turning, stopping or changing their course shall make sure such movement can be made in safety and shall cause signals to be made of their intention in a way visible outside the vehicle."

The section in our judgment has no application. The court further said to the jury in the general charge,

"They are claiming that the defendant made an unlawful turn and drove on the wrong side of the highway. I read you the statute concerning the making of a left-hand turn such as this was, and failure to proceed to the center of the intersection before turning. But even if you find that the plaintiff was negligent in respect to making a left turn by violating the law, that would have no bearing on this case if he had made a turn unlawfully but had completed the turn and had reached the right side of Sunbury Road before the truck of the defendant started to turn from the west side or right side of the road in the direction in which the truck was going and turned to the east side or left side of the road in the direction in which the truck was going."

We do not believe that this part of the charge would have been misinterpreted by the jury, although it was inexact in that it failed to consider that upon one interpretation of the testimony, although the plaintiff had completely changed his course and had reached his right side of Sunbury Road, he may have done so at a point of time so late as to mislead the truck driver and cause him in the emergency to swerve his truck to his left side.

In our judgment the charge was not prejudicial, but as the case will be tried again we have called attention to that part which is inexact.

A deputy sheriff, A. C. Dickerson, in the line of his duty came to the scene of the collision about an hour after it had occurred. He talked with the truck driver about the accident and among other things said to him:

"How in the devil did you get across on this side of the street there?"

Meaning over and onto the truck driver's left or wrong side of the road, to which question the truck driver answered: "I don't know."

Dickerson was put on the stand as a witness for the plaintiff and in his examination in chief was interrogated respecting the query made to the defendant's driver. Upon objection to the question he was not permitted to answer. This ruling was admittedly correct, inasmuch as the statement of the truck driver was not of the res gestae.

Thereafter the defendant's truck driver took the stand in behalf of the defense and on cross-examination was interrogated respecting the query, heretofore quoted, made by the deputy sheriff to him and was permitted to answer, his answer being to the effect that he did not recall whether or not he made the statement imputed to him. Thereafter the plaintiff, in rebuttal, called Mr. Dickerson and was permitted to ask him whether or not he had made the query and to state the answer given by the truck driver.

At the conclusion of the general charge counsel for defendant requested the court to instruct the jury that the rebuttal testimony of the deputy sheriff was limited to the purpose of impeaching the testimony of the truck driver. This request was refused. Clearly the question propounded and answer made thereto were not admissible as substantive testimony, so recognized by the court and properly excluded. It was properly admitted on rebuttal solely for the purpose of impeachment. Unless it was limited to the purpose for which it was intended it was very damaging to the defendant, the company against which it was not admissible as substantive evidence. It is well recognized that when testimony is admitted which is competent for one purpose and incompetent for another it is the obligation of the court, if attention is drawn to it, to state to the jury the purpose for which the evidence is admitted. **Brewing Co. v Bauer, 50 Oh St 560; Village of Lebanon v Schwartz, 4 Oh Ap, 173.** This action should have been taken in this case when so requested by counsel. We believe that the testimony, unlimited in purpose was prejudicial in law and in fact.

The outstanding physical fact in this

case upon which the case of the defense was grounded was the coming together of these cars on the wrong side of the truck driver's road. When it appeared soon after the accident that the driver was without explanation of why he drove over onto his wrong side of the road, and then came on to the stand in the trial of the case and gave a positive and definite theory explanatory of his position on the road, it is probable that the jury could not make distinction as to the proper purpose for which this evidence should be admitted, unless the court especially so instructed it. The jury might readily conclude that the answer of the truck driver was an admission of fault binding upon his employer.

Upon the measure of damages the court charged the jury:

"If you find in favor of the plaintiff you must take into consideration the nature and extent of his injuries as shown by the evidence; the seriousness of the physical injuries which the evidence shows he sustained, the time that he was incapacitated, the time that he was compelled to stay at the hospital, the time he was compelled, after he came home, to be confined to his bed, the time subsequent to that that he has been physically disabled; also take into consideration the pain and suffering which the evidence shows he has undergone, the damage to him physically, as shown by the evidence, and in addition thereto, if you find that he is entitled to recover for the amount which he has been compelled to expend for medical, hospital and nursing services, and think the evidence in this, although the petition says a thousand dollars, the evidence is that the expense was $877.00."

There was no averment in the petition of special damages for impairment of earning power or loss of time, nor was there any general allegation of the result of the injury which upon any view of our somewhat uncertain state of law respecting the necessity of pleading loss of time could have permitted the jury to consider it as an element of damage. See 13 O. Jur., 264; The Cincinnati Traction Co. v Smith, 14 Oh Ap, 389; Waite Taxi and Livery Co. v McGrew, 16 Oh Ap, 219. The admission of testimony without objection relating to impairment of earning capacity probably waived the failure to plead it. But there was no testimony from which the jury could fix the damage in money to the plaintiff because of his loss of time or impairment of earning capacity. 8 R.C.L., 476. The charge of the court was unfortunate in that it stated that consideration must be given to the time that the plaintiff was incapacitated, the time that he was compelled to stay in the hospital, the time that he was confined to his bed, and the time since then that he has been physically disabled, and also the pain and suffering occasioned by the accident and suffered by the plaintiff from the date of his injury until the date of the trial. The element of damages appearing in the charge were loss of time, pain and suffering and expense of medical and surgical services.

The jury may have considered as a measure of damages the money loss which it felt the plaintiff has suffered by reason of his loss of time. Such an element of damage was not permissible under the evidence because speculative.

### Misconduct of Counsel.

4. Claim is made touching alleged misconduct of counsel for the prevailing party.

It is first asserted that counsel on cross-examination of a certain witness shook his finger in the face of the witness and thereafter made improper remarks in the presence of the jury. The record does not exemplify the alleged misconduct.

During the cross-examination of William E. Smith, Mr. Fickel, of counsel for the plaintiff, on cross-examination interrogated the witness respecting a written statement that he had made touching the facts in the case. Mr. Bridge, of counsel for the defendant, interposed and said, "Do you have a statement purporting to be signed by this boy?"

"MR. FICKEL: Yes.

MR. BRIDGE: Will you let us inspect it?

MR. FICKEL: This is a typewritten copy of the statement.

MR. BRIDGE: Do you have the original?

MR. FICKEL: I haven't the original, no. That is retained by the insurance company.

MR. BRIDGE: Now, if the court please—

MR. FICKEL: I mean Mr. Frey's company.

MR. BRIDGE: Now, if the court please, I think it would be a good time to adjourn. I want to do some thinking."

Thereafter Mr. Bridge moved the court to withdraw a juror and to declare a new trial on account of the misconduct of counsel for the plaintiff. It is the claim that counsel for plaintiff injected an insurance company into the case and thus violated

the rule against such procedure. If there is sufficient mention of an insurance company to arrest the attention of the jury it did not relate to any insurance company with which defendant was connected. It was made plain that it was Mr. Frey's company and any implication arising therefrom would be to the effect that Mr. Frey had insurance and that it was his company to which reference was made.

Objection is also made to a question of counsel to the plaintiff whether or not he had theretofore been in any automobile accident. Upon objection the question was permitted to be answered. We see no impropriety in the conduct.

5. If the charge of the court were free from prejudicial arrer we would not say upon this record that the verdict is excessive, nor does it appear to have been given under the influence of passion and prejudice. The injuries to plaintiff were of a grave nature and beyond question have seriously incapacitated him and caused him to suffer greatly, which will no doubt continue so long as he lives. The baneful effects of a fracture of the skull, such as established by this record are well recognized in the medical profession and frequently demonstrated in the cases which come before the courts.

For the prejudicial errors heretofore assigned the judgment will be reversed and cause remanded for new trial.

BARNES, PJ, and BODEY, J, concur.